20-63-18 Lisa Holden v. Unum Life Insurance Co. of America Oral argument not to exceed 15 minutes to decide Mr. Wilson for the Plaintiff Appellant May it please this Court, Scott Wilson representing the Plaintiff Appellant Lisa Holden In this ERISA governed long-term disability insurance case the overarching issue is whether Ms. Holden is merely prevented from performing her own job for her specific employer due to workplace stressors and interpersonal conflicts unique to that work site or if she suffered a mental illness preventing her from performing that occupation for any employer in the national economy.  due to the cognitive and interpersonal impact of anxiety and depression she could not perform the complicated accounting tasks necessary to her position as a Director of Finance for any employer. So Counsel, what is the strongest piece of evidence in the record that Holden was unable to, not just to work for Williamson Company but at any other similar position in the economy? I would point to two separate things, Your Honor. First of all is going to be the, again as I've mentioned, the consistent opinions given by her treating psychiatrist, Dr. Fisher. Below there was a suggestion that Dr. Fisher did not offer that opinion until after Unum had already denied the case on that grounds. In fact, even back during... Talk about his consistent opinion, but while his opinions may have been consistent, there were inconsistent opinions between other treating psychiatrists or psychologists, correct? Respectfully, Your Honor, and this is actually going to be one of the first points that I was going to address. Okay. My point is that we raised two main issues. Firstly, Unum's reliance on non-examining physicians, and secondly, a handful of procedural errors. But before reaching those issues, I would first note that the origin of Ms. Holden's illness that it became in response to workplace conflict is not in dispute. I conceded, her own physicians conceded, Dr. Fisher even said so. But that, Your Honor, is not technically a relevant issue in that the policy does not exclude coverage for workplace injuries. There are certainly some policies of this type that do exclude coverage for workplace injuries. And if you had a workers' comp injury, then it's simply not covered under the policy. That's a perfectly acceptable policy to draft, but this policy doesn't do that. On the contrary, it actually offsets benefits for something that someone receives in workers' comp, implicitly indicating that workplace injuries are covered by the policy. And so the issue is not whether her mental condition originated with workplace trauma. The question is whether or not that trauma is, the effects of that trauma, sufficient and pervasive enough that they would prevent work in any occupation, sorry, in her occupation as a whole, rather than simply her employer. And so we should be looking, and I will concede that several doctors, in addition to Dr. Fisher, did state that that was where her problems began. But I do not believe that any of her physicians stated that that meant that she could do the occupation for a different employer. Dr. Fisher affirmatively stated that she could not. The employer itself, during the short-term disability period, actually described her as having workplace issues that went way beyond normal workplace issues, sounding more pervasive than simply... Yes, it is subject to the arbitrary and capricious standard of review. There's plenty of evidence in this record to support Unum's conclusion about this, correct? Your argument is essentially that Unum had to credit her treating psychiatrists, psychologists, as opposed to others who examined her, right? I would say that the argument is at least subtly different than that. I'm having a little bit of trouble appreciating the subtlety, so perhaps you could help me. This Court has long held that, first of all, the Supreme Court held that there is no treating physician rule in ERISA cases. On the other hand, this Court has long held that whether or not the insurance company is relying on a doctor who actually examined the patient versus a doctor who merely performed a file review is a relevant factor into whether or not the insurance company abused its discretion. That holding goes back to 2005, I believe. The Court also indicated various factors that can make it more relevant that the insurance company is relying primarily on non-examining sources. A key one being where the insurance company is purporting to judge the severity of an individual's subjective symptoms without the benefit of examination. And lastly, that brings us back to the very nature of psychiatric impairments. Psychiatric impairments are not subject to verification by x-ray or MRI or blood test. The very nature of psychiatry is that it depends upon interaction between patient and doctor, making it particularly necessary to have an examination to properly evaluate a psychiatric case. This case strikes me as a little unusual in that your client's narrative of what happened to her and the source of her problems turns out to be in the hands of the physicians upon which Unum relied an important factor. I mean, you can't dispute the fact that whenever she communicated with professionals about what happened to her, it was all about the specifics of her situation at Williams & Connolly, correct? That is absolutely correct, Your Honor. We do not in any way dispute that her situation resulted from mental trauma in the workplace. Doesn't common sense tell us that if you remove the cause of the trauma, that she might flourish in a different environment? Actually, I absolutely 100% would agree that that logic is something that informs the case. But in fact, after she left work and was no longer around that workplace, she didn't get better. Instead, she worsened to the point that there was an inpatient hospitalization for paranoid ideation about what was about her employer. If we take her... There's something, though, which my memory's fuzzy on right now. There's something about the date at which that occurred and the policies coverage, isn't there? Yes, Your Honor, that is correct. That hospitalization occurred some seven months after long-term disability benefits were supposed to begin. And so obviously, if seven months after my client alleged disability, she got run over by a bus, I cannot allege that she was disabled the whole time because of injuries from being run over by the bus. You make it retroactive by virtue of the... That's how you think of it. Based upon Judge Gibbons' own logic as she raised, if my client is just affected by her own individual workplace, we would expect that during that seven-month period, she would be getting better, not worse. I would also add, and this is part of the procedural errors, that were raised in the brief, is that Unum's ultimate conclusion that, oh, okay, maybe she is disabled, but that disability didn't happen until shortly prior to that hospitalization, that's a subtly different rationale than the original rationale. I guess I'm... I think you're... You know, that's a good argument, you know, that it's much different than a traumatic injury that we know would have longstanding effect. This one you can't show as easily, correct? But I'm looking at the doctor's testimony, two things. The doctor's testimony, I don't know if as a chorus kind of thing, because we have doctor after doctor, that we heard that this emanated from something other than, you know, the situational issue. So I'm sorry, the main point I want to make is that where there is discounting of some opinions, in the face of an arbitrary and capricious standard of review, courts may approve where there's discounting of some doctor's opinion, without... You can still account for the favorable one, and nevertheless get approved by discounting the ones that are unfavorable. I certainly follow you there, Your Honor. In response, firstly, I would again point out that the large number of cases finding it improper to rely upon non-examining psychological sources, but getting back to the question of does that hospitalization represent a new worsening... Records review, you have cases that say a records review in the mental health area cannot be given any credence? The court has never found it to be a per se rule, but again, starting with the Smith case back in 2006, I believe, this court found that it was particularly relevant. There was reliance on non-examiners with respect to the evaluating of subjective symptoms, and there's a large string site in the brief of cases finding it particularly... That logic particularly appropriate when dealing with psychiatric conditions which necessarily depend upon the interaction between psychiatrist and patient to figure out what is going on. Robert Parsley with Miller Martin for Apelli Unum. I would like to make three points about why this court should affirm the judgment. First, Unum reasonably concluded that Ms. Holden was not disabled from working for employers other than Williams and Connolly. Secondly, it was not an abuse of discretion to do a file-only review in this case. Third, there were no procedural irregularities. First, on a factual note, the record shows that Ms. Holden did improve, in fact, after she left Williams and Connolly. That's shown in Dr. Fisher's records. It's also shown in the records of Dr. Burnett. So how do you reconcile that with her eventual hospitalization? Her hospitalization a year later in August of 2016, so it was a full year after she left Williams and Connolly, involved, as the medical records state, acute onset of new symptoms. There was a brand new diagnosis at that time. Wasn't there some indication that medication that she had been prescribed for the original issues had actually led to this later episode? I don't know if that proved to be true. No, I don't get that from the record, Your Honor. She was on a low-dose antidepressant and receiving counseling. I don't know why I thought that, but I... She had changed medications at one point. I can say the triggering event for the August hospitalization, number one, she reported she'd only been sleeping for one to two hours a night for several weeks. That can cause psychosis, I would think. She had mania, bipolar disorder, paranoia, delusional thinking. None of those diagnoses were present at any time before August 2016. What she was diagnosed with before August 2016 was depression and anxiety. Those are two separate diagnoses. She was put on high dosage lithium in August 2016, which she'd not been on before. And so what we had was a generalized anxiety and depression, which is not inconsistent with being able to work. Let me say this, Your Honor, Judge Donnell. I have two questions for you. One, in the course of coming to the determination to deny benefits, did UNAM, or were they required to make any credibility determinations in aid of that ultimate determination? They did not, Your Honor. Okay. So that's question one. And the second one is, was there an obligation on, whose burden was it to show that Ms. Holden could perform this work in some other area other than, you know, even though she couldn't do it at Williams and Connolly? Whose burden was that to show? Ms. Holden had the burden to show that she could not perform her duties for any employer in the national economy. She failed to meet that burden. I think that the reason I thought medications could be involved was because the final report notes that her manic symptoms could be due to medications prescribed since August of 2015. I didn't dream that. Okay. That there was no determination one way or another in the file review on that particular point, Your Honor. And the other reason for that. I'm not trying to say that there was a causal relation. I just wanted to verify for myself that I had not imagined that. You did not, Your Honor. I could have told you she did not imagine it. Okay. You did not. But, you know, coverage had lapsed by August 2016. For a new condition, there was no coverage. So there was not a detailed review of that situation. One reason that Unum's decision here was reasonable is that it relied on five treating physicians who had all directly interviewed and seen and diagnosed Ms. Holden. You had Dr. Fisher. He's the only physician in this case out of nine physicians who said she could not work. He's the only physician who said she had post-traumatic distress disorder. That was discredited by Dr. Ralph. In fact, when it comes to the issue of an independent medical exam, she, in fact, had the functional equivalent of that when her own attorneys, after her initial denial, her own attorney and Dr. Fisher said, we want you to go see a neuropsychologist and get fully checked out. And she was fully examined by a neuropsychologist who ran a battery of neurological tests, which came out 99% normal, who evaluated her from a psychological and psychosocial perspective. Dr. Ralph did not find she was disabled from working. That's her own physician. And I think Unum reasonably relied on Dr. Ralph, who said she doesn't have PTSD, reasonably relied on Dr. Bernad, who was another neurologist, who Dr. Holden had seen in person, ran a battery of tests, had another counselor, Dr. Bradford, who suggested that she could work, as long as she had a supportive environment. And Dr. Ralph, followed by the file review of Dr. Brown, suggested that the source of the problems had more to do with her personality coping style, kind of a rigidity in being able to get along with other people than any kind of disabling mental condition. So it was reasonable, and that's all it had to be here, is reasonable. It doesn't have to be the best decision, just has to be a reasonable decision for Unum to say, we're crediting four providers who saw Ms. Holden in person, diagnosed her, treated her, over Dr. Fisher, whose own opinions changed over time and were inconsistent from one point to another. I mean, he really came across as kind of an advocate for her. What's that? Of course, the patient. A patient changes over time, but Dr. Fisher said in his letter in 2016, after Ms. Holden was denied benefits, he said, she's been on a downward course since January. Yet Dr. Bernard, who saw her in February of 2016, said she's getting better, and her only complaint is she's having trouble sleeping. Dr. Fisher ignored that. Dr. Fisher ignored in his own records that she was improving. He really comes across as advocating more than providing truly objective medical testimony. Or certainly Unum could have thought he had become an advocate. That's right. That's how he came across. And the first vocational assessment ever done was by Dr. Fisher. It was after she had first been denied, and it was conclusory. All he did was list the list of tasks from the vocational report and said, she can't do these. Of course, he himself had recorded when he was seeing her back in October, November of 2015, there's no delusion, no mania, no paranoia, she's cognitively intact, memory's intact, she's just depressed. And that not only shows that the August 2016 hospitalization was a brand new set of diagnoses and symptoms, but it shows that his opinion about her vocational disability is really inconsistent with what he was perceiving all along in his treatment. Now, I would like to make a point, a legal point, about independent medical exams. In this circuit, there is no bright line requirement that a file-only review is personal. It's merely a factor to consider. That is the case even when the disability, alleged disability, is psychological or mental. There's no bright line rule that an IME must be done. Now, I would like to point out a case that did not make it into the briefing, and it's a case that I have mentioned to opposing counsel, just for the court to consider, where this court affirmed in a mental disability case without an IME having been done. Now, they didn't really brief that issue, but I did want to bring it to the court's attention. Caster 728, Fed Appendix 457. So the court might want to take a look at that case when it is working on the opinion here. But I would say that this case, the facts of this case, are perfect to set a precedent showing that an IME is not necessarily required for a mental disability. The reason, the reason that it was reasonable... Why would we want to do that in this case? I mean, we've got, this is not a case in which a file review is set against an independent medical examiner. That's right, it's not. So, I mean, why would we want to choose... Well, but I think the proposition here is... The proposition is just reinforcing the fact that the question of an IME is always a factor, there's no broad line requirement. Because here... Either way, it depends on the facts of the individual case. And so it's possible to have a reasonable denial of benefits for a mental disability case where there was a file only review. That's possible. And that's because here, Dr. Ralph, Ms. Holden's own physician, did a whole person assessment that's the functional equivalent of an IME. And so Unum had the benefit of that to rely on. Who pointed her to Dr. Ralph? Was it Fisher and the employer? It was Dr. Fisher and Ms. Holden's attorney. I see. Not the employer. It was after she was first denied and they said, okay, let's go get a full IME. Now, another reason that Dr. Fisher was viewed as unreliable is because he had the benefit of Dr. Ralph's analysis and really didn't engage with it because it didn't support his opinion. So part of this, there's reference to her pursuit of a lawsuit against Williams and Connolly. And that's used by the doctors in various ways. It has nothing to do with the resolution of this case, but did she ultimately file suit and what happened? We referenced that case in the brief. She did file suit. She drafted a quite sophisticated pro se complaint involving breach of fiduciary duty claims. Against Williams and Connolly and Unum in the D.C. District Court. And then that case was recently voluntarily dismissed. Unum found it significant that Dr. Fisher said, well, she can't function in a goal directed way to do her job as a financial employee. And yet she researched and drafted her own sophisticated for a pro se person complaint and filed it. So that shows some goal directed activity. And that's just one of multiple facts that we're taking into account. You're not obliged to use all your time. Just saying. Thank you. I will just say that the procedural irregularities are not irregularities. We've briefed that fully. Thank you for your time and would ask the court to affirm the judgment. Briefly in my three minutes, I would like to start out by pointing out that while counsel finds inconsistencies in Dr. Fisher's statements, as early as October of 2015, Dr. Fisher was very clear that Ms. Holden could not perform her occupation due to emotional disturbance. And one thing that I would ask, if we're asking if the question is to be whether or not Unum's decision is reasonable, why was Dr. Fisher's opinion a good and valid opinion for awarding short-term disability benefits, which happened to come out of the employer's pocket, and not good for approving the same question on long-term disability benefits? I don't think there's much inference to be drawn from that, because certainly by the time the decision was made with respect to long-term benefits, there was a very, very different record of not just one expert opinion, but various others that were not a basis for the short-term disability decision. Isn't that correct? While there is more evidence, I agree, Your Honor. The fact remains that any suggestion that Dr. Fisher only cooked up his idea that Ms. Holden couldn't perform her occupation entirely because the decision is simply not true. I don't think that was exactly the suggestion. Well, if I could ask a related question, and that is, is the standard for making the decision as to short-term disability benefits and long-term, is it the same standard, or are there different standards that are used for making that determination, irrespective of the pockets that the money comes out of? It is my understanding that they were the same standard, Your Honor, because in fact you can see Dr. Fisher was first asked by Unum during the short-term disability period whether this was about her own job versus her own occupation. So Unum was looking at that question even back then. And just quickly, with respect to the procedural irregularity of the change, subtle change in reason for denial between initially, you're not disabled at all, secondly, you might be disabled, but only as of the hospitalization. Plaintiff never got a chance to address that, because that was first raised in the final denial. Under the new ERISA claims regulations, Unum would have been required to provide us with its final piece of information. So we could address that prior to the decision. Those regulations don't apply, but this Court's decision in Wenner, finding that it's improper to change reasons for your decision between initial and final denials, do apply. Plaintiff never had the opportunity to talk to get a clearer statement from the treating physician about how that hospitalization may reflect and relate back to an earlier time period. Thank you. We appreciate your argument. We'll consider the case carefully. If you all will vacate the council table, we'll get started with the cleanup. Thank you, Your Honor.